NO.   95-293

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE ESTATE OF MARGARET DECOCK,

JOYCE HERT,

   Appellant and Cross-Appellee,

   v.

JAMES DECOCK and ROBERT DECOCK,

   **Respondents** and Cross-Appellants.

FILED

OCT 22 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Sixteenth Judicial District,
               In and for the County of Treasure,
               The Honorable Joe L. Hegel, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           Robert L. Stephens, Jr., Billings, Montana; George
           Radovich, Radovich Law Firm, Billings, Montana

       For  Respondent:

           James A. Hubble, Hubble & Ridgeway, Stanford,
           Montana


                           Submitted on Briefs:  March 14, 1996

                                      Decided:  October 22, 1996

Filed:

_____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Appellant Joyce Hert, appeals the decision of the Sixteenth Judicial District Court, Treasure County, finding that Joyce's mother, Margaret DeCock, had testamentary capacity to execute her 1984 will and that Joyce exerted undue influence over Margaret in the transactions surrounding several Certificates of Deposit (CDs). Joyce's brothers, Robert and James DeCock, cross-appeal as to the District Court granting Joyce's motion for a new trial with respect to the validity of the Instrument of Revocation. We affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

Joyce presents the following issues for review:

1. Whether the District Court erred in not amending the judgment and setting aside the jury's finding that certain transactions regarding Margaret's CDs were the result of undue influence by Joyce.

2. Whether the District Court erred in granting a new trial only as to the validity of Margaret's attempted revocation of her 1984 will.

3. Whether the District Court erred in limiting cross-examination regarding the settlement agreement.

Robert and James cross-appeal on the following issue:

Whether the District Court erred in granting a new trial with respect to the validity of the Instrument of Revocation.

FACTUAL AND PROCEDURAL BACKGROUND

Oscar and Margaret DeCock operated a farm and ranch near

2

Hysham, Montana for many years.  They **had five children: Gary,** Marlene, Joyce, Robert and James.  In 1962, Oscar and Margaret made identical wills wherein all of their holdings were left to the surviving spouse.  In the event that no spouse survived, all of their estate would pass to their five children in equal shares.

In 1968, Oscar wrote a new will in which he left a little over nine sections of farm and ranch land to his oldest son, Gary, subject to the condition that Gary pay one-fifth of the appraised value of the land to each of the other four children.  The payment was to be secured by a mortgage and note to the other four and was payable over a ten-year period, without interest.  The balance of the estate was given one-half to Margaret and one-half to the five children.  Gary, Robert and James were given the option to purchase all of the interest in land that was given to Joyce and Marlene.

Oscar died in 1970, and his 1968 will was admitted to probate. After Oscar's death, Margaret repeatedly promised the four other children that she would make up for the perceived disparity in treatment under their father's will.  To that end, Margaret created a number of CDs and savings accounts in her name and the names of some or all of her children.

By early 1980, Margaret's health was declining.  During one hospitalization in 1982, her attending physician noted the presence of symptoms indicative of early dementia.  In January 1983, Margaret was again hospitalized and both attending physicians identified symptoms of mild senility, senile dementia or organic brain syndrome.  After Margaret's release from the hospital, Joyce

**began assisting Margaret in picking up her mail and taking** Margaret to her doctor's appointments, to the grocery store and to the bank.

In April 1984, unbeknownst to the other three children, Robert and James took Margaret to an attorney in Miles City for the purpose of preparing a new will. This will, dated April 23, 1984, disinherited Gary entirely and gave Joyce and Marlene a bequest of only $40,000 each. Robert and James were to receive all of Margaret's real estate along with all livestock, motor vehicles, tools, and farm machinery. The real estate alone had an appraised value of more than $570,000. The remainder of Margaret's estate was to be divided equally among Robert, James, Marlene and Joyce.

A few days after signing this will, Margaret phoned Joyce claiming that she could not remember what she had signed. At Joyce's insistence, Margaret asked the attorney who prepared the will to send her the original by registered mail. However, within a day or two of Margaret's receiving the will in the mail, Robert and James took possession of it to prevent it from being destroyed.

As a result of Margaret's increasing agitation over this will, Joyce contacted an attorney in Billings who prepared an Instrument of Revocation for Margaret's signature. During a visit to Margaret's doctor on May 18, 1984, Margaret again became agitated over the provisions of the will. Joyce, who had accompanied her mother to the doctor's office, produced the Instrument of Revocation, which Margaret signed in the presence of her doctor and his nurse.

Margaret was placed in a nursing home in Forsyth, Montana in

4

October 1985. The doctors concluded that she was no longer able to live independently due to the continuing advance of Alzheimer's disease. Joyce visited Margaret at the nursing home once or twice each week and helped Margaret make out checks to pay her bills. After Joyce moved to Billings in August 1986, she visited Margaret about once a month. In 1988, a conservatorship was established for Margaret wherein all of her assets were administered by Norwest Capital Management.

Margaret died on May 1, 1993, at the age of 83. On May 10, 1993, Robert and James filed an Application for Informal Probate under the terms of the April 23, 1984 will. They were appointed co-personal representatives. On June 11, 1993, Gary filed a petition for the adjudication of the other will asserting that Margaret was either incompetent to make a will in April 1984 or was subject to undue influence and duress at the time she made the 1984 will. On November 19, 1993, Joyce filed a separate response to the petitions for adjudication of the wills. Robert and James filed an amended objection and answer on March 15, 1994, which included counterclaims against Joyce for the return of assets belonging to the estate.

After extensive written discovery and numerous depositions, Robert, James, Gary, and Marlene entered into a settlement agreement on April 8, 1994. Joyce did not participate in the settlement agreement and the dispute between Joyce, Robert and James proceeded to trial with Joyce as plaintiff and Robert and James as defendants. A few days prior to trial, Robert and James

filed a motion to prevent admission of the settlement agreement. The District Court ordered that the agreement would only be admissible to attack the credibility of a witness by showing motive for bias or prejudice.

Trial commenced before a twelve-person jury on September 26, 1994. After several days of testimony, the jury determined that Margaret was competent at the time she executed her April 23, 1984 will and that she was not under the influence of Robert and James at the time she executed the will. The jury also determined that Joyce had exerted undue influence over Margaret in the transactions surrounding several of Margaret's CDs.

After the jury returned its verdict, the District Court held a hearing on the proper form of judgment to be entered as a result of the jury's answers on the verdict form. The issue of attorney fees was also addressed at this hearing. After taking the matter under advisement, the District Court filed its judgment on December 12, 1994, wherein the court upheld the jury's verdict and ordered that Joyce pay the face value of each of the CDs at issue along with interest. The court also awarded Robert and James attorney fees in the amount of $55,653.57.

Following the Notice of Entry of Judgment, Joyce entered a motion for a temporary stay which was subsequently granted by the District Court. On December 20, 1994, Joyce filed a Motion for a New Trial or to Alter or Amend Judgment on the grounds that there was insufficient evidence presented at trial to support a finding that she exerted undue influence over Margaret in connection with

6

the CDs and that the monies the court ordered Joyce to repay had in actuality been disbursed and received by others. Joyce also objected to the award of attorney fees.

On February 2, 1995, the District Court entered its Memorandum and Order denying Joyce any relief in connection with the issue of undue influence concerning the CDs. The court also concluded that the jury's finding of competency as to the April 23, 1984 will and the issue of undue influence as to that will could not be relitigated. Nevertheless, the court granted Joyce's motion for a new trial with respect to the validity of the Instrument of Revocation and reserved her objection to attorney fees pending resolution of the new trial.

Joyce appeals from the jury verdict and judgment, as well as the District Court's rulings on her post-trial motions. James and Robert cross-appeal from the District Court's granting a new trial to determine the validity of the Instrument of Revocation.

Issue 1

Whether the District Court erred in not amending the judgment and setting aside the jury's finding that certain transactions regarding Margaret's CDs were the result of undue influence by Joyce.

Joyce contends that the District Court erred in not amending the judgment and setting aside the jury verdict on the grounds that there was insufficient evidence presented at trial to support a finding that Joyce exerted undue influence over Margaret in connection with the CDs and that the monies from the CDs that the District Court ordered Joyce to repay had, in actuality, been

7

disbursed and received by others. There are four instances where the jury determined that Joyce exerted undue influence over Margaret.

First, Margaret purchased a CD at First National Bank of Hysham on February 5, 1982, for $50,000. The names on that CD were Margaret, Robert, Marlene, James and Joyce. On February 10, 1983, Joyce accompanied Margaret to First National Bank where Margaret cashed this CD. Joyce then drove Margaret to Security Bank in Billings where Margaret purchased a new CD for $52,895.55 in the names of Margaret or Marlene or Joyce. On September 5, 1989, while Margaret was incompetent, Joyce transferred that CD into her own name and that of Marlene. On September 16, 1993, Joyce cashed this CD, distributing half to Marlene and half to herself.

Second, on May 18, 1984, Joyce accompanied Margaret to First State Bank of Forsyth where Margaret purchased a Time Savings Certificate in the names of Margaret or Joyce or Marlene. The funds for that purchase came from two checks for the sale of livestock and a savings account held in the names of Margaret or Robert. The value of the certificate at the time of purchase was $19,650.05.

Third, Margaret purchased five $4000 CDs in 1974 and placed her name and one of her children's names as joint owner on each of the CDs. She held these until 1983 when she redeemed them and purchased four $10,000 CDs from First National Bank in Hysham, placing her name along with one of her children's names, with the exception of Gary, on each of the CDs. On July 2, 1984, Margaret,

accompanied by Joyce, visited **First National Bank and cashed the** 1983 CDs. Margaret purchased four new CDs in the amount of $10,451.26 each. She placed her own name on each CD and named Joyce, Robert and Marlene as a joint owner on three of them, but did not name James as joint owner on the fourth CD.

Finally, on May 12, 1986, Joyce accompanied her mother to First National Bank in Hysham where Margaret cashed a CD for $10,000 held in the names of Margaret and Robert. After hearing all the evidence, the jury determined that Joyce had exerted undue influence over Margaret at the times that Margaret completed each of these transactions

The standard of review of a jury's verdict is whether there is substantial credible evidence in the record to support it. Barthule v. Karman (1994), 268 Mont. 477, 485, 886 P.2d 971, 976 (citing Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 322-23, 820 P.2d 1285, 1287).

Undue influence is defined at § 28-2-407, MCA, as follows:

      (1)   the use by one in whom a confidence is reposed
by another or who holds a real or apparent authority over
him of such confidence or authority for the purpose of
obtaining an unfair advantage over him;
      (2)   taking an unfair advantage of another's
weakness of mind; or
      (3)   taking a grossly oppressive and unfair
advantage of another's necessities or distress.

In construing this statute, Montana courts consider the same criteria in determining whether a donor making a gift or a testator executing a will was subject to undue influence at the time the gift was made or the will was executed. Taylor v. Koslosky (1991), 249 Mont. 215, 218, 814 P.2d 985, 987 (citing Cameron v. Cameron

9

(1978), 179 Mont. 219, 229, 587 P.2d 939, 945).

The criteria used to determine if undue influence has been exerted upon a donor or a testator are: (1) confidential relationship of the person-attempting to influence the donor or testator; (2) the physical condition of the donor or testator as it affects their ability to withstand influence; (3) the mental condition of the donor or testator as it affects their ability to withstand influence; (4) the unnaturalness of the disposition as it relates to showing an unbalanced mind or a mind easily susceptible to undue influence; and (5) the demands and importunities as they may affect a particular donor or testator taking into consideration the time, the place, and all the surrounding circumstances. Matter of Estate of Lien (1995), 270 Mont. 295, 303-4, 892 P.2d 530, 535 (citing In re Maricich's Estate (1965), 145 Mont. 146, 161, 400 P.2d 873, 881). Each of these criteria must be satisfied to prove a claim of undue influence. Lien, 892 P.2d at 535 (citing Flikkema v. Kimm (1992), 255 Mont. 34, 40, 839 P.2d 1293, 1297).

Applying these criteria to the facts in the case before us, clearly the first criteria has been satisfied as there was a confidential relationship between Joyce and Margaret. Until the conservatorship was established in 1988, Joyce assisted Margaret by picking up her mail and taking Margaret to the bank, to the grocery store and to her doctor's appointments. Additionally, after Margaret was confined to a nursing home, Joyce assisted Margaret in writing out checks to pay Margaret's bills.

The second and third criteria, the physical and mental

10

condition of the donor or testator as may affect their ability to withstand influence, have been satisfied as well. There was sufficient evidence presented at trial by various doctors to establish Margaret's failing physical and mental condition as it affected Margaret's ability to withstand influence. Nevertheless, Joyce does not dispute the sufficiency of the evidence on the first three criteria. Instead, she argues that the evidence on the fourth and fifth criteria was insufficient to support a finding that she exerted undue influence over Margaret.

As to the fourth criteria, unnaturalness of the disposition, Margaret had consistently purchased during her lifetime, CDs in her own name along with those of each of her children, with the exception of Gary. Although, the fact that a parent might leave the majority of his or her assets to only one child, while excluding others, is not in and of itself unnatural, Lien, 892 P.2d at 536, there was sufficient evidence presented at trial to show that the transactions in question were contrary to Margaret's prior dispositions and were thus "unnatural." It was not until Joyce began accompanying Margaret to the bank that Margaret removed James' and Roberts' names from the CDs and created new CDs without their names or cashed CDs held jointly with Robert and James rather than those held jointly with Joyce and Marlene.

The fifth criteria, demands and importunities as they may affect the donor or testator, was satisfied in that Joyce was with Margaret at the time Margaret conducted each of these transactions. It was reasonable for the jury to conclude from the evidence and by

11

taking into consideration the time, the place and all the surrounding circumstances, that Joyce's demands and importunities affected Margaret and allowed Joyce to unduly influence her.

Joyce contends that it is immaterial whether she exerted undue influence over Margaret in connection with the CDs, since under the Uniform Commercial Code, Joyce, as an alternative designee on the CDs, had the legal authority to negotiate and renew the CDs in whatever fashion she chose. We will not address this argument as it was not raised before the District Court and was raised for the first time on appeal. Marsh v. Overland (1995), 274 Mont. 21, 29, 905 P.2d 1088, 1093 (citing Lane v. Smith (1992), 255 Mont. 218, 221, 841 P.2d 1143, 1145).

Joyce also argues that the District Court should not have ordered that she repay the face value of each of the CDs along with interest as the majority of the funds from these CDs was disbursed and received by others. The evidence does indicate that Joyce did not receive all of the funds involved in these four transactions. In the first transaction, Joyce received $28,079.71, half of the Security Bank CD and Marlene received the other half. In the second transaction involving the Time Savings Certificate purchased on May 18, 1984, the certificate was transferred to the conservatorship on May 13, 1988. After Margaret's death, it was transferred to her estate. In the third transaction, involving the July 2, 1984 CD for $10,451.26, this CD was transferred to the conservatorship where it was eventually cashed and the money used for Margaret's benefit. In the fourth transaction involving the CD

12

held in the names of Margaret and Robert that was cashed on May 12, 1986, a portion of the money from that CD was used to pay the property taxes on the DeCock ranch, including that part of the ranch leased by Robert and James. The balance was placed in an interest-bearing savings account in Margaret's name. That savings account was eventually transferred to the conservatorship and used for Margaret's benefit.

With the exception of the funds from the Security Bank CD, the funds from these transactions were used for Margaret's benefit. Joyce will not be held responsible for repaying any funds from which she did not derive a benefit.

Accordingly, we hold that there was substantial evidence for a jury to find that Joyce exerted undue influence over Margaret in the transactions surrounding Margaret's CDs and we affirm the District Court on this issue. However, we reverse the District Court's order concerning the amount Joyce must repay on these CDs and we remand to the District Court for a redetermination on this issue.

Issue 2 and Cross-Appeal

Whether the District Court erred in granting a new trial only as to the validity of Margaret's attempted revocation of her 1984 will.
Whether the District Court erred in granting a new trial with respect to the validity of the Instrument of Revocation.

In its Memorandum and Order filed February 2, 1995, the District Court concluded that it had erred in refusing to instruct the jury with respect to the validity of the Instrument of Revocation. Hence, the court granted Joyce's motion for a new

13

trial on the issue of the validity of the Instrument of Revocation and on the subissues of whether Margaret was competent at the time the document was executed and whether the document was executed under undue influence.

On appeal, Joyce contends that the District Court should also have granted a new trial as to the validity of the 1984 will. In their cross-appeal, Robert and James contend that the court erred in granting a new trial at all.

The standard of review of a district court's ruling on a motion for a new trial is whether the court abused its discretion. Hando v. PPG Industries, Inc. (1995), 272 Mont. 146, 149, 900 P.2d 281, 283. See also Estate of Spicher v. Miller (1993), 260 Mont. 504, 506, 861 P.2d 183, 184.

The District Court erred in failing to instruct the jury on the Instrument of Revocation, thus we find no abuse of discretion in the District Court's grant of a new trial regarding this document and we affirm on this issue. Furthermore, we find merit in Joyce's contention that the District Court should have granted a new trial on the validity of the 1984 will along with its grant of a new trial on the Instrument of Revocation. The will and the Instrument of Revocation were executed so close in time, within 25 days, that the validity of both documents is inextricably intertwined. Moreover, the medical testimony at trial dealt with Margaret's competence at the time she executed both documents. Under the circumstances of this case, it is necessary that the same fact finder adjudicate the validity of both the will and the

14

**Instrument of Revocation, taking into consideration all of the evidence.**

Accordingly, we hold that the District Court erred in failing to grant a new trial on the validity of the 1984 will and we reverse and remand on this issue.

In its judgment filed December 12, 1994, the District Court awarded Robert and James attorney fees in the amount of $55,653.57. In her Motion for New Trial or to Alter or Amend Judgment, Joyce objected to the award of attorney fees on the grounds that there were originally three parties as plaintiffs in this action, all of whom were asserting the same challenge to the 1984 will. In addition Joyce claimed that the personal representatives were not entitled to an award of attorney fees for their work in connection with the recovery of the CDs.

In its February 2, 1995 Memorandum and Order, the District Court reserved Joyce's objection to the award of attorney fees pending resolution of the new trial on the validity of the Instrument of Revocation. In light of our decision to grant a new trial on the validity of the 1984 will as well as the Instrument of Revocation, we reverse the award of attorney fees to Robert and James and we remand to the District Court.

Issue 3

Whether the District Court erred in limiting cross-examination regarding the settlement agreement.

On April 8, 1994, Robert, James, Gary and Marlene entered into a settlement agreement. Joyce was not a party to this agreement. Prior to trial, James and Robert filed a motion to prevent Joyce

15

**from admitting the settlement agreement into evidence at trial.** The District Court granted the motion and ruled that the contents of the settlement agreement would not be admissible. However, the court ordered that any witness that was a party to the agreement could be questioned as to the existence of the agreement and as to the fact that the witness might receive a greater share of the estate if one party prevailed over the other in order to attack the credibility of the witness by showing a motive for bias or prejudice. On appeal, Joyce contends that the District Court erred in limiting cross-examination regarding the settlement agreement.

This Court will review the evidentiary decisions of a trial court to determine whether the trial court abused its discretion and will not overrule a trial court's decisions as to admissibility of evidence unless there was manifest abuse. Jim's Excavating Service v. HKM Assoc. (1994), 265 Mont. 494, 506, 878 P.2d 248, 255 (citing Mason v. Ditzel (1992), 255 Mont. 364, 370-71, 842 P.2d 707, 712).

Rule 408, M.R.Evid., forbids the introduction at trial of offers to compromise and settlement agreements. However, the Rule does permit the use of settlement agreements for limited purposes, such as proving bias or prejudice of a witness in accordance with Rule 607, M.R.Evid.

At trial, Joyce's counsel questioned Gary, one of the settling parties, extensively regarding the settlement agreement and whether Gary would gain under the agreement if Robert and James prevailed at trial. Gary admitted that he would gain. From this cross-

16

examination, Gary's bias was adequately brought out and the jury had sufficient evidence of the nature and effect of the settlement agreement to judge the credibility of Gary's testimony.

Accordingly, we hold that the District Court did not abuse its discretion in limiting the admission of the settlement agreement to show bias or prejudice of a witness.

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

17

October 22, 1996

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

ROBERT L. STEPHENS, P.C.
P.O. Box 1438
Billings  MT  59103-1438


GEORGE RADOVICH, ESQ.
RADOVICH LAW FIRM
926 Main, Suite 9
Billings  MT  59105

James A. Hubble
HUBBLE & RIDGEWAY
P.O. Box 556
Stanford MT  59479


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy