No. 98-493

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 162

295 Mont. 160

983 P.2d 308

IN THE MATTER OF THE ESTATE OF

THOR K. LANDE,

Deceased.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Big Horn,

The Honorable G. Todd Baugh, Judge presiding.

No

COUNSEL OF RECORD:

For Appellant:

Brent R. Cromley; Moulton, Bellingham, Longo & Mather,

Billings, Montana

For Respondent:

James Robert Graves and Ingrid Gustafson; Graves, Toennis &

Gustafson, Billings, Montana

Peter Stanley, Attorney at Law, Billings, Montana

Submitted on Briefs: March 18, 1999

Decided: July 8, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1. Clifford Lande (Clifford), Kande Lande (Kande) and Kip Lande (Kip) (collectively, the Contestants) appeal from the order of the Thirteenth Judicial District Court, Big Horn County, admitting the last will and testament of Thor K. Lande (Cubby) to probate after a jury found by special verdict that Cubby had testamentary capacity and was not unduly influenced when he executed his will on December 30, 1996. We affirm.

¶2. We address the following issues:

¶3. 1. Did the District Court abuse its discretion by denying the Contestants' discovery requests?

¶4. 2. Did the District Court abuse its discretion by implicitly denying the Contestants' motion *in limine*?

¶5. 3. Did the District Court abuse its discretion in refusing the Contestants' proposed instruction regarding the existence of a confidential relationship as a matter of law?

*BACKGROUND*¶6. *Cubby owned a ranch near Pryor, Montana, when he died on January 4, 1997. He was survived by four adopted children: Clifford, Kande and Kip had been adopted many years earlier; Joshua Payne (Joshua) was adopted several months prior to Cubby's death. Cubby's wife, Dorothea Bell Lande (Dorothea), predeceased him.*

¶7. Cubby was diagnosed with pancreatic cancer in January of 1996 and was hospitalized several times in November and December of 1996. Cubby had executed several wills in previous years and executed two more in the months just prior to his death.

¶8. On November 25, 1996, Cubby executed a will naming Nancy Witt (Witt), Joshua's mother, and Clifford co-personal representatives of his estate and creating two trusts. In the first, a 15-year trust with a $50,000 corpus, Witt was designated the trustee and Joshua was the sole beneficiary. In the second 15-year trust (hereinafter,

the Ranch Property Trust), Clifford, Kande and Kip were designated co-trustees and equal beneficiaries of income produced by the ranch. The will provided that, at the expiration of the Ranch Property Trust, the ranch would be divided equally between Clifford, Kande and Kip. The residue of Cubby's estate not provided for in the trusts was to be divided equally among the four children.

¶9. Cubby executed a codicil to the November will on December 12, 1996. In pertinent part, the codicil left Cubby's ranch house to Joshua and named him an equal beneficiary--with Clifford, Kande and Kip--of income produced under the Ranch Property Trust. The codicil did not alter the earlier provisions requiring division of the ranch property between Clifford, Kande and Kip at the expiration of that trust. The codicil also designated Clifford and Witt as co-trustees of the Ranch Property Trust and, again, as co-personal representatives of Cubby's estate.

¶10. Cubby was hospitalized at St. Vincent's Hospital in Billings, Montana, from December 17, until December 28, 1996. On December 28, 1996, Wilma Lande (Wilma) and Vickie Lande MacCarty (Vickie) checked Cubby out of the hospital and drove him to their ranch near Pryor, Montana. Wilma is the widow of Cubby's deceased nephew and Vickie is Wilma's daughter. On December 29, 1996, Cubby instructed Vickie to contact his attorney, Ingrid Gustafson (Gustafson), about his will and he executed another will the following day.

¶11. The December 30, 1996, will created three 15-year, $50,000 trusts, naming Clifford, Kande and Kip as the beneficiaries. The remaining corpus of each trust was to be distributed equally to the beneficiaries on expiration of the trust. This will again created the 15-year Ranch Property Trust, but altered the terms so that Clifford, Kande and Kip would each receive 10% of the income produced by the ranch. In addition, at the expiration of the Ranch Property Trust, the ranch would be divided equally between Joshua and Vickie. The December 30, 1996, will designated Vickie and Witt as co-personal representatives of Cubby's estate and co-trustees of the Ranch Property Trust.

¶12. After Cubby's death, Gustafson filed a motion on behalf of Vickie and Witt (collectively, the Personal Representatives) in the Thirteenth Judicial District Court, Yellowstone County, requesting probate of the will executed on December 30, 1996, and appointment of Vickie and Witt as co-personal representatives of the estate. In April of 1997, Clifford filed a *pro se* motion disputing Cubby's testamentary capacity

and claiming that Cubby had been unduly influenced at the time he executed the December 30, 1996, will. Clifford's motion requested, and the court ordered, that venue be changed to Big Horn County.

¶13. In June of 1997, Clifford filed an additional *pro se* pleading renewing his prior objections and, in addition, objecting to Vickie and Witt acting as Cubby's co-personal representatives under the December 30, 1996, will. Clifford also requested supervised administration of the estate pursuant to § 72-3-301, MCA. Thereafter, Clifford obtained representation and Kande and Kip joined Clifford in contesting the validity of the December 30, 1996, will. The parties filed various motions and discovery ensued.

¶14. The Contestants' discovery request to the Personal Representatives included a request for production of files relating to Gustafson's representation of Cubby and the files in her possession relating to Cubby's representation by her predecessor, Marcie Schwarz (Schwarz). The Personal Representatives objected to the discovery requests, asserting the attorney-client privilege, and the Contestants requested that the files be produced at Gustafson's deposition. During her deposition, Gustafson reasserted the attorney-client privilege, refused to answer questions about her communications with Cubby and refused to produce the requested files. Gustafson's deposition was discontinued.

¶15. The Contestants subsequently filed a motion *in limine* requesting that Gustafson be prohibited from testifying at trial. The Personal Representatives responded that, in light of further legal research, they were withdrawing the assertion of the attorney-client privilege with regard to Cubby's estate planning and related legal services, but would continue to assert the privilege with regard to other legal work performed for Cubby; the responses also indicated that all estate planning files and records had been provided to the Contestants. At the final pretrial conference, the District Court treated the Contestants' motion *in limine* as a motion to compel and ordered Gustafson to submit all files in her possession related to legal work performed for Cubby--including the Schwarz files, but excluding estate planning files previously produced--for *in camera* inspection. The court also ordered legal memoranda relating to the applicability of the attorney-client privilege vis-a-vis the files ordered for *in camera* inspection, and the Personal Representatives again responded that they had produced all the estate planning files in Gustafson's possession. During the same period of time, the Personal Representatives moved for summary judgment, the

Contestants responded and the District Court denied the motion.

¶16. The Personal Representatives continued to assert the attorney-client privilege with regard to eight other files, however, and submitted those files--including Dorothea's probate file and Joshua's adoption file--to the District Court for its *in camera* inspection. After reviewing the files, the District Court concluded that the Personal Representatives could not assert the attorney-client privilege against the Contestants, Dorothea's probate file and Joshua's adoption file were not relevant or discoverable, and the remaining six files it had inspected were relevant and discoverable. The court ordered production of the latter files, Gustafson's deposition was completed and the case proceeded to a jury trial on the issues of testamentary capacity and undue influence vis-a-vis Cubby's December 30, 1996, will.

¶17. The jury returned a special verdict finding that Cubby had testamentary capacity and was not unduly influenced when he executed the will. Based on that verdict, the District Court admitted the December 30, 1996, will to formal probate as Cubby's valid last will and testament and confirmed Vickie and Witt as Cubby's co-personal representatives. The Contestants appeal.

## DISCUSSION

¶18. 1. Did the District Court abuse its discretion by denying the Contestants' discovery requests?

¶19. The Contestants concede that the District Court ultimately rejected the Personal Representatives' privilege-based discovery objections, ordered submission of all legal files relating to representation of Cubby in Gustafson's possession which had not been produced previously, and required production of all but Dorothea's probate file and Joshua's adoption file. They contend, however, that the District Court erred in failing to: A) "strike" the Personal Representatives' objections to discovery based on the attorney-client privilege; B) require production of Dorothea's probate file and Joshua's adoption file; and C) require production of Cubby's complete estate planning files, including the Schwarz files, in Gustafson's possession. We review a district court's discovery-related rulings to determine whether the court abused its discretion. In re Estate of Bolinger, 1998 MT 303, ¶ 24, 971 P.2d 767, ¶ 24, 55 St.Rep. 1251, ¶ 24 (citations omitted).

*A. Failure to "strike" privilege-based discovery objections*

¶20. The Contestants discuss at length the Personal Representatives' assertion--and withdrawal--of the attorney-client privilege and the District Court's ultimate conclusion that the privilege could not be asserted. They argue, however, that the court "did not give [them] relief" when it failed to "strike" the privilege-related discovery objections.

¶21. The Contestants' suggestion that the District Court was required to strike privilege-related objections from the record, in addition to rejecting the applicability of the privilege, is entirely without merit. Perhaps for that reason, no authority is advanced for the Contestants' position, as required by Rule 23(a)(4), M.R.App.P. Having failed to advance supporting authority, the Contestants cannot establish error in this regard. *See* Duck Inn, Inc. v. Montana State Univ. (1997), 285 Mont. 519, 523, 949 P.2d 1179, 1181.

*B. Failure to require production of Dorothea's probate file and Joshua's adoption file*

¶22. After inspecting Gustafson's files *in camera*, the District Court determined that Dorothea's probate file and Joshua's adoption file were not relevant to the case and, therefore, were not discoverable pursuant to Rule 26(b)(1), M.R.Civ.P. The Contestants contend that the District Court abused its discretion by failing to require production of those files.

¶23. In regard to Dorothea's probate file, the Contestants specifically contend in their opening brief that the District Court abused its discretion because a copy of Dorothea's 1988 will was introduced as part as an exhibit during the trial, trial testimony indicated Cubby had promised Dorothea that Clifford, Kande and Kip would always be provided for in the will and Gustafson testified she did "some estate work with [Cubby] and Dorothea." We observe at the outset, however, that the trial-related matters on which the Contestants rely occurred subsequent to the District Court's refusal to require production of Dorothea's probate file. Therefore, those matters cannot properly serve as the basis for a determination that the District Court abused its discretion at the time it failed to require production of Dorothea's probate file.

¶24. Rule 26(b)(1), M.R.Civ.P., provides in part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of any other party . . . .

Thus, the proper inquiry is whether Dorothea's probate file was relevant to the Contestants' claims that Cubby lacked testamentary capacity or was unduly influenced.

**¶25. The District Court concluded that Dorothea's probate file was not relevant because it was completed some years ago. In their reply brief, the Contestants contend only that Dorothea's probate file was relevant because it "was not completed that long ago." The Contestants' mere assertion that Dorothea's probate file was relevant because it "was not completed that long ago" does not established a connection between Dorothea's probate file and the subject matter involved in this case--that is, testamentary capacity and undue influence vis-a-vis Cubby's December 30, 1996, will--as required by Rule 26(b)(1), M.R.Civ.P.**

**¶26. In determining that Joshua's adoption file was not relevant, the District Court relied on the following statements from the Contestants' brief in opposition to the Personal Representatives' motion for summary judgment:**

[T]he contestants do not contest that Joshua Payne is a child of Thor Lande, and also entitled to whatever benefits that status may bestow. Contestants agree that Joshua has been a continual beneficiary of Thor Lande, just as they themselves have been.

The Contestants contend in three sentences in their opening brief that Joshua's adoption file was "certainly a matter which bore upon Cubby Lande's estate planning." In support of that contention, the Contestants merely state that Gustafson represented Cubby in Joshua's adoption and testified in her deposition that she assumed one of the reasons Cubby adopted Joshua was to avoid Montana inheritance tax. In their reply brief, the Contestants briefly contend that Joshua's adoption two or three months prior to Cubby's death was a significant estate planning event.

**¶27. It may well be that Joshua's adoption was a significant estate planning event near in time to Cubby's death. However, Joshua had long been a substantial devisee in Cubby's wills and the Contestants were not challenging his adoption or his status**

as a beneficiary. Again, the Contestants have not established the relevance of Joshua's adoption to their claims that Cubby lacked testamentary capacity and was unduly influenced when he executed the December 30, 1996, will as required by Rule 26(b)(1), M.R.Civ.P.

¶28. We hold, therefore, that the District Court did not abuse its discretion in failing to require production of Dorothea's probate file and Joshua's adoption file.

*C.* *Failure to require production of Cubby's complete estate planning files, including the Schwarz files, in Gustafson's possession*

¶29. While not particularly clear, the Contestants seem to argue that they did not receive estate planning documents created by Schwarz which were in Gustafson's possession. The problem with this argument is that the record does not support it. Indeed, the Personal Representatives' responses to several of the Contestants' requests for production pertaining to Cubby's estate planning file were attached to an affidavit in support of the Contestants' motion *in limine*. Those responses included, among other things, estate planning documents prepared by Schwarz for Cubby as early as 1988.

¶30. The Contestants have failed to make any showing that the Personal Representatives did not produce Cubby's entire estate planning files. Moreover, while we recognize the difficulty involved in "proving a negative," the Contestants bear the burden of establishing error by the District Court. *See Duck Inn, Inc.*, 285 Mont. at 523, 949 P.2d at 1181. Having failed to identify any "missing" documents, the Contestants have failed to meet their burden of establishing error by the District Court.

¶31. We hold, therefore, that the District Court did not abuse its discretion with regard to requiring production of Cubby's estate planning files, including the Schwarz files, in Gustafson's possession.

¶32. **2. Did the District Court abuse its discretion by implicitly denying the Contestants' motion *in limine*?**

¶33. Subsequent to Gustafson's assertion of the attorney-client privilege during her initial deposition and her privilege-based refusal to answer questions or produce

requested files, the Contestants filed a motion *in limine* to prohibit Gustafson from testifying at trial. They asserted prejudice based on their inability to explore the files--or Gustafson's knowledge relating to those files--which could have led to admissible evidence. The District Court treated the motion *in limine* as a motion to compel and ordered Gustafson to produce for *in camera* inspection all the files in her possession relating to Cubby's legal representation which had not already been produced. Gustafson produced eight files for inspection and the court concluded only two were not relevant and ordered production of the remaining files. Thereafter, Gustafson's deposition was reconvened and completed.

¶34. We review a district court's denial of a motion *in limine* for abuse of discretion. Hulse v. State, Dept. of Justice, 1998 MT 108, ¶ 15, 289 Mont. 1, ¶ 15, 961 P.2d 75, ¶ 15. Furthermore,

"[t]he purpose of a motion in limine is to prevent the introduction of evidence which is irrelevant, immaterial, or unfairly prejudicial." Accordingly, the authority to grant or deny a motion in limine "rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties."

*Hulse, ¶ 15 (quoting City of Helena v. Lewis (1993), 260 Mont. 421, 425-26, 860 P.2d 698, 700).*

¶35. The Contestants contend that the District Court erred by treating their motion *in limine* as a motion to compel. They cite to Aysseh v. Lawn (N.J. Super. Ct. Ch. Div. 1982), 452 A.2d 213, as supporting their claim that a motion *in limine* prohibiting Gustafson from testifying was the "only method of eliminating the prejudice . . . brought about by their inability to obtain information and files in discovery." Specifically, the Contestants contend that Gustafson had information critical in resolving the issues in this case and that her assertion of the attorney-client privilege prejudiced them.

¶36. In *Aysseh*, an attorney who had information critical to the resolution of the issues involved asserted the attorney-client privilege during his deposition by the plaintiff. *Aysseh*, 452 A.2d at 214. The defendants subsequently waived the attorney-client privilege and offered the attorney as a witness at trial. *Aysseh*, 452 A.2d at 220. The New Jersey trial court concluded that where prejudicial frustration of discovery resulted from the assertion of the attorney-client privilege--which was subsequently waived during trial--the only appropriate sanction was to bar the attorney as a

witness. *Aysseh*, 452 A.2d at 221-22. The Contestants' reliance on *Aysseh* is misplaced for several reasons.

¶37. First, *Aysseh* is a trial court decision which is neither authoritative nor persuasive in our review of a Montana trial court decision. Moreover, *Aysseh* is readily distinguishable. In *Aysseh*, the assertion of the attorney-client privilege prejudiced the plaintiff because he was unable to explore in a deposition facts known by the attorney which were critical in resolving the issues in the case and about which he later testified during trial. Here, after the privilege was asserted and partially withdrawn, the District Court rejected the applicability of the privilege altogether, compelled production of the files in question for *in camera* inspection, determined that six of the files were discoverable and ordered those files produced to the Contestants. Thereafter, Gustafson's deposition was reconvened to allow the Contestants an opportunity to explore her knowledge relating to the newly produced files. Under these circumstances, and unlike the situation in *Aysseh*, the Contestants were not prejudiced by Gustafson's early assertion of the attorney-client privilege.

¶38. In any event, the usual procedure following a party's objection or refusal to respond to discovery is a motion to compel discovery. *See* Rules 34(b), 37(a), M.R.Civ. P. In the event an order compelling discovery is issued, a party's failure to comply may result in sanctions appropriate to the situation. *See* Rule 37(b), M.R.Civ.P. Here, the District Court essentially converted the Contestants' motion *in limine* to a motion to compel pursuant to Rule 37(a), M.R.Civ.P., and, following its *in camera* inspection, compelled production of most of the documents requested by the Contestants. Gustafson's deposition continued thereafter and the Contestants did not raise an issue of incomplete production or seek sanctions in the form of exclusion of testimony at that time.

¶39. The Contestants contend, however, that they were prejudiced later because Gustafson testified at trial about wills and codicils created prior to her representation of Cubby, and they point out that they renewed their motion *in limine* when she began that testimony. Close scrutiny of the record reveals, however, that-- during a direct examination spanning approximately 60 pages of transcript-- Gustafson answered only two questions about any will of Cubby's prepared prior to her representation of him and those responses merely summarized the provisions of that 1992 will. Furthermore, the will itself had been produced to the Contestants and admitted into evidence, and the Contestants' only objection to the questions was that

the will "speaks for itself." On this record, the Contestants have not established prejudice with regard to Gustafson's testimony.

¶40. We hold that the District Court did not abuse its discretion by implicitly denying the Contestants' motion *in limine*.

¶41. **3. Did the District Court abuse its discretion in refusing the Contestants' proposed instruction regarding the existence of a confidential relationship as a matter of law?**

¶42. As discussed above, the Contestants challenged the validity of the December 30, 1996, will on the basis that Wilma and Vickie unduly influenced Cubby. A party contesting a will on grounds of undue influence must establish five criteria, one of which is the existence of a confidential relationship between the testator and the person attempting to influence the testator. Estate of DeCock v. DeCock (1996), 278 Mont. 437, 444, 925 P.2d 488, 492 (citations omitted). The Contestants concede that whether a confidential relationship exists ordinarily is a question for the factfinder. *See Estate of DeCock*, 278 Mont. at 444-46, 925 P.2d at 492-93.

¶43. In this case, the Contestants offered Proposed Instruction No. 15 which told the jury that the court had determined, as a matter of law, that a confidential relationship existed between Wilma and Vickie, on the one hand, and Cubby, on the other. The District Court refused the instruction and the Contestants assert error.

¶44. "We review jury instructions in a civil case for abuse of discretion." Moore v. Imperial Hotels Corp., 1998 MT 248, ¶ 21, 967 P.2d 382, ¶ 21, 55 St.Rep. 1023, ¶ 21 (citation omitted). Further,

[a] district court has broad discretion in deciding whether to give or refuse a party's proposed jury instruction. In reviewing whether a particular jury instruction was properly given or refused, we must consider the instruction in its entirety, as well as in connection with the other instructions given and *with the evidence introduced at trial*.

*Moore, ¶ 21 (citations omitted) (emphasis added)*.

¶45. The Contestants assert that the evidence establishing the existence of a confidential relationship was undisputed in this case. As a result, they urge that the District Court should have instructed the jury that a confidential relationship existed as a matter of law. We disagree.

¶46. Pursuant to *Moore's* directive, we consider the evidence introduced at trial in reviewing whether the Contestants' Proposed Instruction No. 15 was properly refused. *See Moore*, ¶ 21 (citation omitted). It is true that the record before us contains substantial evidence which would support a finding that a confidential relationship existed in this case. Among other things, Wilma was granted power of attorney regarding Cubby's banking transactions and health care, Cubby stayed at her house after he left the hospital and she provided Cubby with medication and food. With regard to a confidential relationship between Cubby and Vickie, the record reflects that Vickie arranged to bring Cubby to her mother's house, filled prescriptions for Cubby and discussed Cubby's business and estate affairs with him.

¶47. The record also reflects, however, that Cubby remained in control of his finances and business decisions, directed Vickie and Wilma regarding how to care for him and did not share the contents of his December 30, 1996, will with them. Given the conflicting evidence at trial, the determination of whether a confidential relationship existed was a question to be resolved by the jury, as the finder of fact. *See Estate of DeCock*, 278 Mont. at 444-46, 925 P.2d at 492-93.

¶48. Moreover, the Contestants' attempt to analogize the present case to *Estate of DeCock*, Matter of Estate of Lien (1995), 270 Mont. 295, 892 P.2d 530 and Christensen v. Britton (1989), 240 Mont. 393, 784 P.2d 908, in support of their assertion that a confidential relationship existed here as a matter of law is unpersuasive. None of those cases involved either the legal issue or the procedural posture now before us.

¶49. In *Estate of DeCock*, we reviewed a jury verdict finding that a daughter exerted undue influence over her mother to determine if substantial credible evidence supported that finding. *Estate of DeCock*, 278 Mont. at 444-46, 925 P.2d at 492-93. More particularly, we determined whether sufficient evidence had been presented on each of the five criteria needed to establish undue influence. *Estate of DeCock*, 278 Mont. at 445, 925 P.2d at 492-93. With regard to a confidential relationship, we mentioned the evidence supporting its existence in that case. *Estate of DeCock*, 278 Mont. at 445, 925 P.2d at 492. Given that we were merely determining whether evidence supported a finding, it is clear we did not conclude in *Estate of DeCock* that similar evidence in a different case would establish the existence of a confidential relationship as a matter of law.

¶50. In *Estate of Lien*, we reviewed a district court's grant of summary judgment and conclusion that no factual issues existed to submit the contestant's claim of undue influence to a jury. *Estate of Lien*, 270 Mont. at 298, 892 P.2d at 531-32. While not reflected in our opinion, the contestant set forth evidence on appeal claiming generally that the devisor was unduly influenced, but did not specifically address the confidential relationship criterion. The personal representatives claimed, and we agreed, that the contestant failed to demonstrate the existence of the second and third criteria necessary to establish undue influence, namely, the devisor's physical and mental condition. *See Estate of Lien*, 270 Mont. at 298, 892 P.2d at 535. Prior to reaching those criteria, we set forth the evidence of record sufficient to establish the existence of a confidential relationship, in the procedural context of a summary judgment proceeding in which neither party specifically disputed that criterion. *See Estate of Lien*, 270 Mont. at 298, 892 P.2d at 535. The evidence set forth in *Estate of Lien* regarding the existence of a confidential relationship does not bear on the question of whether a confidential relationship existed as a matter of law in the present case.

¶51. *Christensen* involved a bench trial on the conservator's claim of undue influence in an effort to set aside certain transfers. *Christensen*, 240 Mont. at 394, 784 P.2d at 909. We reviewed the evidence, including the evidence supporting the existence of a confidential relationship, and determined that evidence of undue influence was "overwhelming;" on that basis, we reversed. In doing so, however, we applied the "clear preponderance of evidence against" the trial court's finding standard of review. *Christensen*, 240 Mont. at 398-40, 784 P.2d at 911-13. We no longer use that standard of review and, in any event, we were merely determining whether evidence supported the trial court's findings. The evidence enumerated in *Christensen* cannot equate to the existence of a confidential relationship as a matter of law in the present case. Here, the evidence was conflicting and, as concluded above, the question was one for the jury.

¶52. We hold that the District Court did not abuse its discretion in refusing the Contestants' proposed instruction regarding the existence of a confidential relationship as a matter of law.

¶53. Affirmed.

/S/ KARLA M. GRAY

No

We concur:

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART