JUSTICE NELSON
dissents.
¶89 I dissent as to Issue 2.1 would reverse and remand for a new trial. Therefore, I decline to reach the other issues addressed in the Court’s Opinion.
¶90 The Court starts its discussion of Issue 2 with the statement that the judgment roll, transcript and brief are tortured and confused. Under that expedient guise the Court then proceeds to ignore our mandate on remand from Stockman Bank of Montana v. Potts, 2002 MT 178, 311 Mont. 12, 52 P.3d 920 (Stockman I), rewrite the record and the briefs, bail out the trial court from its “confusion” and erroneous rulings, absolve the Bank from its own statements, and ignore and rewrite our jurisprudence interpreting Rule 408, M.R.Evid. To say that we have exceeded our function and duties as an appellate court would, without reservation, constitute gross understatement. ¶91 It is not our function to re-try the case for the lower court, to act as revisionists of the record and then to re-brief the issues on appeal for the attorneys. If the record, briefs and judgment roll are as confused and tortured as our Opinion makes them out to be, then we should send the case back to the trial court and to the attorneys for a new trial with an unequivocal admonition that they do their respective jobs properly, to the end that both litigants get a fair trial.
¶92 Instead of trying, sua sponte, to make a silk purse out of a sow’s ear, this Court would be well advised to simply start with the actual law of the case set out in Stockman 1-conveniently ignored in the Court’s effort to spin the trial court proceedings to its own liking.
¶93 On remand under Stockman I, one of the issues that the jury was to decide was whether there actually was a settlement between Potts and the Bank on January 28,2000. Indeed, we specifically reversed the District Court’s summary judgment in favor of the Bank on this very issue in Stockman I, and we remanded for trial. Stockman I, ¶ 27. We stated: “We conclude that the 1/28/00 letter when considered in combination with the parties’ other correspondence, does create an *401 ambiguity regarding whether their settlement was contingent on alternate financing.” Stockman I, ¶ 23.
¶94 The Court completely ignores this command; in fact, it does not even mention the January 28, 2000 letter from the Bank’s (then) counsel to Potts’ counsel which created the ambiguity which was central to why we remanded the case. The primary issue to be decided by the fact-finder on remand was what the parties’ intentions as regards settlement were as of January 28,2000, Stockman I, ¶ 26, not, as the Court now seems to believe, whether there were attempts to settle the case after that date. The question presented on remand and our direction to the trial court was simple and straightforward: “Was the case settled at or prior to January 28, 2000? The Jury is to decide that question of fact.” Accordingly, any evidence relevant to that issue was fair game at trial; if the Bank and its new counsel made statements after January 28,2000, and before the trial reflecting that the case was still active-i.e., that there had been no settlement at or prior to January 28,2000-then that was evidence relevant to the trial of the issue remanded. The Court unwittingly concedes this point when at ¶ 52, it states (in reference to the $75,000 Question and the Memorandum) that “[t]hey are each statements, by counsel [for the Bank], which directly relate to the possibility of settling issues between Potts and the Bank-any issues.” (Emphasis added.) And there you have it-the Bank’s new attorneys taking the position that the case had not settled at or prior to January 28,2000. Why would the jury not be entitled to hear this evidence? Why would counsel not be entitled to argue this evidence to the jury? Why would Potts not be prejudiced if the jury was denied the opportunity to hear either? It was the very evidence he needed to prove his case and to defend against the Bank’s opposing position.
¶95 Contrary to the Court’s unfathomable reasoning, this evidence was not evidence of settlement or compromise prohibited under Rule 408; it was evidence that was offered to prove the issue that this Court remanded for retrial under Stockman I. If the Bank wanted to finally settle Potts’ outstanding claims pending appeal on Stockman I, or subsequent to our decision and before retrial, there was nothing stopping them from doing that. But the Bank cannot take the position post-January 28, 2000-“Mr. Potts let’s settle the case” and then, subsequently, come into court and tell the court and fact-finder, “Hey, judge and jury, the case was settled on January 28, 2000.” The Bank wants to have it both ways: the case was settled on January 28, 2000, so no offers thereafter-sincere or otherwise-should be admissible; or the case was not settled, in which event the Bank was untruthful with *402 the District Court and the jury in taking the position that the matter had been settled.
¶96 Indeed, what is apparent is that the Bank’s new attorneys knew for a fact that Potts’ claims had not been settled at or prior to January 28, 2000-the statements and documents at issue prove that without question. At trial, the Bank wants, on the one hand, to convince the jury that the case had settled as of January 28, 2000. Indeed, its witnesses were allowed to testify that the January 28, 2000 letter proved that settlement was effected on that date. On the other hand, the Bank wants to prohibit the jury from hearing evidence and argument from the lips and pens of its own attorneys that disprove that very position. And this Court falls for that legerdemain hook, line and sinker.
¶97 And to confuse things even more, according to the Court’s reconstitution of the record, testimony on the $75,000 Question was admitted without objection, but then the trial judge reversed himself-presumably meaning that the evidence was no longer admitted. Notwithstanding, nothing in the Court’s Opinion would lead one to believe that the trial court actually instructed the jury not to consider the evidence. Given that, it was obviously error to prohibit Potts’ counsel from arguing evidence to the jury that was still technically before it. It would be fascinating to see what authority the Court could create for the proposition that counsel is prohibited from arguing to the jury evidence that the fact-finder has not been instructed to disregard.
¶98 Moreover, the Orders, Memorandum and $75,000 Question are public documents. Why would the jury not be entitled to examine in the jury room what any person could have simply obtained from the clerk of the court? The Bank can hardly claim that the information in these documents is private or secret or divulges a position that should be kept from the fact-finder when it was the Bank that put these documents and this information into the public domain.
¶99 And then there’s the matter of Rule 408. Not only did the District Court misapply Rule 408, but in doing so it deprived Potts of his ability to present evidence on the very issue this Court directed the jury to decide. In affirming the trial judge’s ruling, we have, likewise, misapplied Rule 408 and have ignored our own recent case law. As noted above, Potts’ evidence was not being proffered as evidence of an offer of settlement or compromise. It was, to the contrary, being offered: (a) as proof on the issue which this Court remanded be tried to the jury in Stockman 7-i.e., whether the case had settled at or prior to January 28,2000, and (b) to defend against the Bank’s position that *403 the case had so settled. The Orders, $75,000 Question and Memorandum absolutely contradicted the Bank’s position at trial and were unquestionably offered to impeach its position and that of its witnesses. If, indeed, as the Court seems to think, the Bank and Potts were trying to settle the case after January 28, 2000, then it logically follows that the case had not, in fact, been settled before or on that date-again the precise issue that the jury was to decide on remand. ¶100 The fact that Rule 408 evidence can be prohibited for one purpose but be admitted for another seems completely lost in the Court’s tunnel view of this case. The plain language of Rule 408 states that the rule
does not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.
Moreover, this proposition is a firmly and well-entrenched principle of law in our jurisprudence.
¶101 In Kaeding v. W.R. Grace & Co.-Conn., 1998 MT 160, ¶ 30, 289 Mont. 343, ¶ 30, 961 P.2d 1256, ¶ 30, this Court made clear that, under the plain language of Rule 408, the Ride “only excludes evidence that is being offered to prove liability or the validity of a claim or amount.” By its own terms, Rule 408:
[D]oes not require exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay....
¶102 Here, Potts was not attempting to offer evidence of a compromise in settlement of a disputed liability or to prove the invalidity of or amount of a claim-which is all that Rule 408 prohibits. Rather, Potts was attempting to offer evidence that the settlement never occurred in the first place-precisely the issue we directed the jury resolve on remand after Stockman I. Potts’ evidence was offered to impeach the testimony of the Bank’s attorney, Pat Kelly, and its president, Stan Markuson, that the case had settled. Potts’ evidence was offered to show that they knew that the case had not settled-i.e., the evidence went to the credibility of both Kelly and Markuson. It was also offered to show that the Bank’s new attorneys knew that the case *404 had not settled on or before January 28, 2000. Potts’ evidence was offered to rebut the evidence offered by the Bank in support of its claim that the case had settled on January 28, 2000. The Court’s Opinion completely misses the point of the offered testimony.
¶103 It is bad enough that the trial court allowed the Bank to put on its evidence, in spite of Rule 408, yet, because of the Rule, it denied Potts the ability to put on his defense. Worse yet, we condone this ruling in the face of our own recent decisions.
¶104 In Tripp v. Jeld-Wen, Inc., 2005 MT 121, 327 Mont. 146, 112 P.3d 1018, we allowed the defendant to place before the jury not only evidence of the Plaintiffs’ settlement with a former defendant in the case, but, as well, the amount of the settlement. Reciting the general prohibition of Rule 408-that the rule “does not allow for evidence of settlements in order to prove or disprove liability”-we focused on the Rule’s exception. That is, we recognized that “the witness was not asked about the settlement in order to prove any issues of liability, but to illustrate the bias of the witness. This is permissible under Rule 408.” Jeld-Wen, ¶ 20. Indeed, we stated that this testimony was proper because it was “pertinent to the credibility of the witness.” Jeld-Wen, ¶ 21. In contradictory fashion, we held that testimony of the settlement and amount thereof was pertinent to the credibility of the witness for the plaintiff in Jeld-Wen, but it is not pertinent to the credibility of the Bank’s witnesses here.
¶105 Similarly, in Estate of DeCock v. DeCock (1996), 278 Mont. 437, 448, 925 P.2d 488, 494-95, overruled on other grounds by In re Estate of Bradshaw, 2001 MT 92, 305 Mont. 178, 24 P.3d 211, we affirmed the trial court’s entry of an order in limine preventing the admission of the settlement agreement itself, with the exception that
any witness that was a party to the agreement could be questioned as to the existence of the agreement and as to the fact that the witness might receive a greater share of the estate if one party prevailed over the other in order to attack the credibility of the witness by showing a motive for bias or prejudice. [Emphasis added.]
Again, we relied on the exception to Rule 408, permitting the use of settlement agreements to prove the bias of prejudice of a witness. DeCock, 278 Mont. at 448, 925 P.2d at 494-95.
¶106 Likewise, in In re Estate of Stukey, 2004 MT 279, ¶ 68, 323 Mont. 241, ¶ 68, 100 P.3d 114, ¶ 68, we affirmed the admission of a letter written during settlement negotiations by counsel for one of the parties “as evidence that the negotiating parties were indeed negotiating under the assumption that [the conservator’s] Final *405 Inventory represented the amount of the estate to be divided.” Relying on Kaeding, ¶ 30, referred to above, we again held that this evidence did not fall under the prohibition of Rule 408, but rather, was admissible for proving bias and prejudice of the witness. Stukey, ¶¶ 66-68.
¶107 In like manner, our decision in Kiely Const., L.L.C. v. City of Red Lodge, 2002 MT 241, ¶ 95, 312 Mont. 52, ¶ 95, 57 P.3d 836, ¶ 95, stressed that Rule 408 “is not a complete bar on evidence concerning offers of compromise ... [and that] [t]he rule specifically ‘does not require exclusion when the evidence is offered for another purpose...’ ” With that in mind, we affirmed, as falling within the exception of the Rule, the District Court’s determination to allow evidence of settlement negotiations “to demonstrate the arbitrary and capricious nature of the decision of Red Lodge to adopt the [Subdivision Improvement Agreement] subject to seven new conditions.” Kiely, ¶ 95. ¶ 108 Our interpretation of Rule 408 in the case sub judice is completely at odds with our interpretation of that Rule in Jeld-Wen, DeCock, Stukey, and Kiely. In the first three cases, we permitted evidence of settlement negotiations to demonstrate the bias and prejudice of witnesses; yet, we disallow Potts’ offered testimony for the same purpose here. In DeCock, we allowed evidence of settlement negotiations as to the existence of the settlement agreement; yet, we deny Potts the ability to use his evidence for that same purpose here. And, in Kiely, we allowed evidence of settlement negotiations when offered for another purpose; yet, here, we will not even allow Potts to use his evidence to demonstrate that no settlement was reached. The Court’s decision in this case makes no sense; there is no principled basis on which to distinguish Jeld-Wen, DeCock, Stukey, and Kiely from our Opinion in the case at bar.
¶109 The simple fact is these cases, as well as the plain language of the Rule, all stand for the basic proposition that Rule 408 evidence can be prohibited for one purpose, but be admitted for another.
¶110 Our entire purpose in remanding this case for retrial in Stockman / has been frustrated (Potts has been denied a fair trial) and the Court has now established a precedent that will have judges and trial lawyers scratching their heads for years.
¶111 I would reverse and remand this case for a new trial. I dissent from our failure to do so.
CHIEF JUSTICE GRAY joins in the dissent of JUSTICE NELSON.