FILED

May 31 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0349

DA 15-0349

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 127

LUKE KEUFFER and STEPHANIE KEUFFER,

      Plaintiffs and Appellees,

    v.

O.F. MOSSBERG & SONS, INC.; BURNS AUCTION
& APPRAISAL, LLC; and JOHN DOES 1-5,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV 11-547B
                Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Robert K. Baldwin, J. Devlan Geddes, Goetz, Baldwin & Geddes, P.C.,
            Bozeman, Montana

      For Appellees:

            Monte D. Beck, Justin P. Stalpes, Lindsay C. Beck, Beck
            & Amsden, PLLC, Bozeman, Montana

Submitted on Briefs:  April 27, 2016

Decided:  May 31, 2016

Filed:

_____
                    Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 O.F. Mossberg & Sons, Inc., and Burns Auction & Appraisal, LLC (collectively "Mossberg"), appeal the Order of the Eighteenth Judicial District Court, Gallatin County, granting Luke and Stephanie Keuffers' motion to disqualify Mossberg's counsel. The District Court disqualified Mossberg's out-of-state counsel, Renzulli Law Firm, and its local counsel, Tarlow & Stonecipher, pursuant to Rule 1.20(c) of the Montana Rules of Professional Conduct. The basis for the court's disqualification order was a prospective client consultation that Luke Keuffer had with an attorney from Tarlow & Stonecipher, which was later used in a deposition of Stephanie Keuffer by John Renzulli of the Renzulli Law Firm. The court found that the continued involvement in the case by Mossberg's counsel gave the Keuffers reason to question whether their case can proceed fairly and cause to question what they may have disclosed in the consultation to Tarlow & Stonecipher that may later be used against them in the current litigation. The court also found that Mossberg's counsel's actions undermine the public's trust in the legal profession. For the reasons discussed below, we affirm the District Court's order disqualifying Renzulli and Tarlow & Stonecipher.

## ISSUE

¶2 We restate the dispositive issue on appeal as follows:

*Whether the District Court abused its discretion in disqualifying Mossberg's counsel.*

2

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     In October 2008, Luke Keuffer ("Luke") and his wife, Stephanie Keuffer ("Stephanie"), were hunting outside White Sulfur Springs, Montana.[1]  Stephanie was hunting with a .308 Mossberg model 800 rifle ("Mossberg rifle").  The Keuffers allege that the Mossberg rifle fell and struck Luke's rifle and then discharged and shot Luke in the face, causing serious and permanent injury.  On August 10, 2010, Luke called Tarlow & Stonecipher, PLLC, and spoke to attorney Margaret Weamer "regarding [Luke's] possible claim against [a] gun manufacturer for injuries sustained in [a] hunting accident."  Weamer's time record indicates that she spoke with Luke for six to twelve minutes.  After discussing the case with Luke, Weamer advised him that Tarlow & Stonecipher would not be interested in taking the case.

¶4     Luke and Stephanie retained other counsel and, in June 2011, filed a personal injury action against Mossberg.  Tarlow & Stonecipher later agreed to represent Mossberg as local counsel against Luke in the litigation.  Prior to agreeing to represent Mossberg, Tarlow & Stonecipher ran a conflict check that revealed the phone conversation between Luke and Weamer.  Tarlow & Stonecipher determined that the phone conversation did not create a conflict with their representation of Mossberg.  The firm disclosed the phone conversation to Mossberg's national counsel John Renzulli—who appears pro hac vice in this case—but did not disclose the phone conversation to Luke's counsel.

---

[1] Stephanie and Luke have since divorced and she is now Stephanie Peer.  The parties and the District Court refer to her as "Stephanie Keuffer" and we will do the same.

¶5 The Keuffers' counsel remained unaware of the telephone conversation between Luke and Weamer until Renzulli deposed Stephanie on June 24-25, 2014. Renzulli began his deposition of Stephanie with an inquiry into other law firms that the Keuffers may have consulted regarding this case. Five questions into the deposition, Renzulli asked Stephanie: "Did anyone from – either you or Luke have any conversations with anybody from Tarlow – T-A-R-L-O-W – Law Firm here in Bozeman?" When Stephanie responded that she did not remember, Renzulli pushed forward, stating: "All right. Let me be very direct . . . . This was not the first law firm that you talked to, correct, about taking this case?" When Stephanie acknowledged that she had made calls to other law firms before the Keuffers hired their current counsel, Renzulli followed up with the ensuing exchange:

> Q. [W]hen you made a couple of calls, did some of the firms say that they weren't interested in the case?
>
> A. Yeah. I don't remember who, which firms they were exactly, though.
>
> Q. So you told them the facts, and they weren't interested?
>
> A. Pretty much, yeah, from what I can remember.

¶6 Following the deposition, the Keuffers filed a motion to disqualify both Tarlow & Stonecipher and the Renzulli Law Firm, LLP, based on the consultation between Luke and Weamer, and Renzulli's use of the consultation at Stephanie's deposition. Mossberg opposed the motion and filed two affidavits from Weamer regarding her recollection of the phone conversation with Luke. Mossberg also requested a hearing to resolve the issue.

4

¶7    The District Court held a hearing on April 10, 2015. During the hearing, the District Court questioned both Weamer and Renzulli. The court specifically questioned Renzulli regarding why he asked Stephanie about contacting other law firms during the deposition. Renzulli responded that he typically asks such questions in these types of cases because he likes "to know if [the plaintiffs are] shopping the case." Renzulli indicated further that he intended to introduce that information at trial. The District Court permitted Weamer to testify for the limited purpose of addressing the conflict check conducted by Tarlow & Stonecipher. She confirmed that Tarlow & Stonecipher did not disclose the conflict check results to the Keuffers' counsel.

¶8    Following the hearing, the District Court issued an order granting the Keuffers' motion to disqualify both Tarlow & Stonecipher and the Renzulli firm. The District Court determined that Mossberg's counsel violated Rule 1.20(b) and (c). The court found that Renzulli improperly used the Keuffers' consultation against them during Stephanie's deposition. The court found that the purpose of Renzulli's questioning was to intimidate the Keuffers and create an impression they have a bad case. The court indicated the uniqueness of the situation as Renzulli did not use "information learned" from the consultation, but used the fact that the consultation occurred. The court concluded that this was equally a violation of the Rules because Renzulli used the consultation to intimidate and create an adverse inference about the Keuffers' case. The District Court disqualified Mossberg's counsel because their actions defeat the purpose of the Rules of Professional Conduct which threatens the public's trust in the legal system. Mossberg appeals.

**STANDARDS OF REVIEW**

¶9 A district court possesses broad discretion in ruling on a motion to disqualify counsel. We review a court's grant of a motion to disqualify for an abuse of discretion. *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 26, 303 Mont. 274, 16 P.3d 1002. A district court abuses its discretion when "it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Jacobsen v. Allstate Ins. Co.*, 2009 MT 248, ¶ 53, 351 Mont. 464, 215 P.3d 649. Application of the Rules of Professional Conduct to a given set of facts is a question of law; "[u]ltimately, it is this Court's 'constitutional mandate to fashion and interpret the Rules of Professional Conduct.'" *Krutzfeldt Ranch, LLC v. Pinnacle Bank*, 2012 MT 15, ¶ 15, 363 Mont. 366, 272 P.3d 635 (quoting *In re Rules of Prof'l Conduct*, 2000 MT 110, ¶ 9, 299 Mont. 321, 2 P.3d 806). As a question of law, the district court's application of the Rules to disqualify an attorney is reviewed for correctness. *In re Marriage of Perry*, 2013 MT 6, ¶ 16, 368 Mont. 211, 293 P.2d 170.

**DISCUSSION**

¶10 *Whether the District Court abused its discretion in disqualifying Mossberg's counsel.*

¶11 The Montana Constitution provides that the Montana Supreme Court may "make rules governing . . . admission to the bar and the conduct of its members." Mont. Const. art. VII, sect. 2, cl. 3; *See also Harlen v. City of Helena*, 208 Mont. 45, 49, 676 P.2d 191, 193 (1984) (concluding the Court possesses exclusive authority to promulgate rules governing the conduct of attorneys); *Schuff* ¶ 33 (upholding the Court's authority in all

matters involving the conduct of attorneys practicing law in this state); *In re Rules of Prof'l Conduct*, ¶ 9 (concluding that this Court has a mandate to fashion and interpret the rules); *Krutzfeldt*, ¶ 15.

¶12 In *Schuff*, we noted that although a rule violation is not *prima facie* grounds for disqualification, "a trial court may consider attorney violations of the Rules of Professional Conduct if that misconduct results in prejudice or adversely impacts the rights of the parties in the case pending before it." *Schuff*, ¶¶ 35-37. There, we concluded:

> [T]he gravamen of a motion to disqualify is not that an attorney or firm violated one of the conflict of interest rules under our Rules of Professional Conduct (*see, e.g.*, Rules 1.7, 1.8, 1.9, 1.10, 1.16, M. R. Pro. C.); rather, a motion to disqualify must offer sufficient proof that the continued representation of one party by the attorney or firm will prejudice or adversely impact the rights of another party in the matter pending before the court. Evidence demonstrating that an attorney or firm did, in fact, violate a professional conduct rule merely serves as additional weight that may tip the scales in favor of disqualification.

*Schuff*, ¶ 36.

¶13 The application of the Rules of Professional Conduct in this case turns on how Mossberg's out-of-state counsel used the information gained from Luke's prospective client consultation with Mossberg's local co-counsel and whether that use warranted disqualification. Rule 1.20 governs attorneys in their dealings with prospective clients; it provides:

> (a) A person who consults with or has had consultations with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had consultations with a prospective client shall not use or reveal

7

information learned in the consultation(s), except as Rule 1.9 would permit with respect to information of a former client.

      (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d).  If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

      (d) Representation is permissible if both the affected client and the prospective client have given informed consent, confirmed in writing, or:

      (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

      (2) written notice is promptly given to the prospective client.

M. R. Pro. C. 1.20.

The dissent interprets Rule 1.20 narrowly and in a compartmentalized manner.  For the Rule to have any teeth and be an effective tool for the district courts to utilize in regulating the conduct of attorneys, it must be broadly construed whereby all the sub-sections work together as a whole.  There is a logical progression from one subsection to the next which clearly supports a construction of the Rule as a whole.  In this case it is evident that the District Court correctly applied the Rule as a whole in making its decision.  While we recognize that disqualification is a harsh remedy, under the circumstances of this case we cannot conclude that the District Court abused its discretion in imposing such a remedy.

**Rule 1.20(a)**

¶14    Neither party disputes that under Rule 1.20(a) Luke became a prospective client to Tarlow & Stonecipher when he called the law firm and discussed his case with Weamer.  Because Luke was a prospective client of Tarlow & Stonecipher, certain duties were

8

triggered under the Rule. These duties must be followed by the attorneys that participate in the prospective client relationship.

**Rule 1.20(b)**

¶15 Under Rule 1.20(b), a prospective client's conversation is protected and no information gained from the consultation may be used or revealed by the lawyer with whom the client consults. The District Court found that Mossberg's counsel improperly used the Keuffers' consultation against them during Stephanie's deposition. The court indicated the uniqueness of the situation as Mossberg did not use "information learned" from the consultation, but used the fact that the consultation occurred. The court determined that this was equally a violation of the Rule because Mossberg used the consultation to intimidate the Keuffers and cause them to question the merits of their case.

¶16 Mossberg argues on appeal that a conflict occurs not because of the fact of the consultation, but because of the passing of confidential information from the client to the attorney that may be "significantly harmful." Mossberg asserts no such information was passed and implies that the "use" of information as determined by the District Court is error. We disagree. When the fact of a consultation is used to attack and intimidate a party, such conduct constitutes a violation of Rule 1.20 and will support a motion for sanctions, including disqualification.

¶17 In his deposition of Stephanie, Renzulli questioned her about Luke's consultation with Tarlow & Stonecipher. Renzulli's line of questioning was not idle chit-chat about whether Stephanie was generally familiar with Bozeman law firms and Tarlow &

9

Stonecipher in particular. He began the deposition by questioning her about law firms either she or her husband had contacted about this case. He then asked her point blank whether one of those firms was Tarlow & Stonecipher. Renzulli pressed on by asking, "[s]o you told them the facts, and they weren't interested." Pertaining to Luke's consultation with Tarlow & Stonecipher, the record is clear that before he started his deposition of Stephanie, Renzulli knew that Luke had talked to Weamer, provided her with facts about his case, and been told that her firm was not interested. Thus, Renzulli used information learned in the consultation in violation of Rule 1.20(b).

¶18 Rule 1.20(b) does not require that an attorney use a verbatim transcript of the information obtained during a prospective client consultation in order for it to constitute a violation of the rule. Nor does Rule 1.20(b) require that the information used or revealed be "significantly harmful," as would be required to form the basis for disqualification under Rule 1.20(c). Rule 1.20(b) places an absolute prohibition against using or revealing *any* information learned in the consultation. It should be clarified that the mere use of information learned in a prospective client consultation, if inadvertent or harmless, may not by itself form the basis for disqualification. In this case, however, Renzulli consciously used the information learned in Luke's consultation with Tarlow & Stonecipher for tactical litigation purposes. Specifically, the District Court found:

> [T]he purpose of Renzulli's questioning regarding the fact that Plaintiffs consulted with Tarlow & Stonecipher was to intimidate Plaintiffs and to create an impression that Plaintiffs have a bad case – so bad that Tarlow & Stonecipher, having heard the facts, decided to represent the Defendants instead of Plaintiffs. Using the consultation in this manner gives Plaintiffs reason to question whether their case can proceed fairly. It also gives Plaintiffs cause to question what they may have disclosed to Tarlow &

10

Stonecipher that may later be used against them. While Plaintiffs claim they cannot remember what they told Tarlow & Stonecipher, they believe they told all attorneys they consulted with the same information and some of that information is harmful to them.

The District Court also found that Renzulli's conduct undermined the public's trust in the legal profession.

¶19    In *Schuff*, we noted that although a rule violation is not *prima facie* grounds for disqualification, "a trial court may consider attorney violations of the Rules of Professional Conduct if that misconduct results in prejudice or adversely impacts the rights of the parties in the case pending before it." *Schuff*, ¶¶ 35, 37. We concluded:

> [A] motion to disqualify must offer sufficient proof that the continued representation of one party by the attorney or firm will prejudice or adversely impact the rights of another party in the matter pending before the court. Evidence demonstrating that an attorney or firm did, in fact, violate a professional conduct rule merely serves as additional weight that may tip the scales in favor of disqualification.

*Schuff*, ¶ 36.

¶20    After finding that Renzulli's questioning was designed to intimidate the Keuffers and to create an impression that they had a bad case; that it caused the Keuffers to question whether their case can proceed fairly and whether they may have disclosed to Tarlow & Stonecipher information that may later be used against them; and that Renzulli's conduct undermined the public's trust in the legal profession, the District Court concluded that disqualification was appropriate. We do not find that this ruling constituted an abuse of the broad discretion the district court possesses when ruling on a motion to disqualify. *Schuff*, ¶ 26. Although the District Court did not use the precise words "prejudice or adversely impact the rights of another party," it does not take the

Rosetta Stone to decipher the District Court's assessment of Renzulli's conduct. We therefore affirm the District Court's Order disqualifying Renzulli.

¶21 Mossberg argues the District Court wrongfully imputed the conflict to Tarlow & Stonecipher. The District Court determined that "while Tarlow & Stonecipher did not find it necessary to disclose Weamer's consultation with Luke to Plaintiffs' counsel, they did find it to have sufficient pertinence to inform Renzulli . . . ." The court also determined that because the information came from Tarlow & Stonecipher, it gives the Keuffers reason to question what they may have disclosed to Tarlow & Stonecipher that might later be used against them. Based on these findings, the court imputed Renzulli's conduct to Tarlow & Stonecipher. Tarlow & Stonecipher are implicated with Renzulli because, after becoming local co-counsel for Mossberg, they communicated the substance of the phone call and thereafter participated in the development and prosecution of the case. The continued participation of Tarlow & Stonecipher in this case would undermine the remedy imposed on Renzulli. Thus, we affirm the District Court's Order disqualifying Tarlow & Stonecipher.

¶22 The District Court's disqualification of Renzulli and Tarlow & Stonecipher was not an abuse of discretion. Although the District Court based its ruling on Rule 1.20(c), we conclude the disqualification was proper because of the violation of Rule 1.20(b) and the prejudice to the Keuffers resulting from the violation. It is well-established that a district court's ruling may be sustained under the "wrong-reason, right-result" appellate rule. *Tipp v. Skjelset*, 1998 MT 263, ¶ 16, 291 Mont. 288, 967 P.2d 787. The District Court incorrectly relied on Rule 1.20(c) as the basis for disqualifying defense counsel;

however, it correctly concluded that Renzulli's conduct warranted disqualification of Renzulli as well as Tarlow & Stonecipher.

## CONCLUSION

¶23 We conclude that defense counsel improperly used information obtained from the prospective client meeting with Luke, causing prejudice to the Keuffers and leading them to question the merits of their case. For this and the additional reasons set forth above, the District Court's Order disqualifying defense counsel is affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

Justice Beth Baker, dissenting.

¶24 I dissent.

¶25 The Court today upholds the District Court's disqualification order without reasoned analysis of the applicable Rule. When Luke Keuffer contacted the Tarlow & Stonecipher firm "about the possibility of forming a client-lawyer relationship," he became a prospective client pursuant to M. R. Prof. Cond. 1.20(a). It is undisputed, however, that the Keuffers never established a client-attorney relationship with the Tarlow & Stonecipher firm. In *Perry*, we recognized that Rule 1.20 requires examination of whether a lawyer received information from a prospective client that could be

13

significantly harmful to the prospective client in the matter. *Perry*, ¶¶ 21, 24. We noted that different analyses apply to the duties a lawyer owes to a current or former client. *Perry*, ¶¶ 19, 22-23. *See Pro-Hand Servs. Trust v. Monthei*, 2002 MT 134, 310 Mont. 165, 49 P.3d 56 (relying on M. R. Prof. Cond. 1.9—which applies to former clients—to determine if there was a "reasonable probability" that confidences were disclosed) *superseded by rule as stated in Perry*, ¶ 19; *Krutzfeldt* (relying on M. R. Prof. Cond. 1.7 and 1.10—which apply to current clients—to determine whether disqualification is required because counsel breached its duty of loyalty).

¶26    Rule 1.18 of the Model Rules of Professional Conduct "is nearly identical" to Montana's Rule 1.20. *Perry*, ¶ 21. Similar to our discussion in *Perry*, the comments to Model Rule 1.18 make clear that while the rule imposes certain duties on a lawyer relating to prospective clients, those duties do not provide prospective clients with the same protections as the duties imposed on lawyers relating to current or former clients.

> Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice. A lawyer's consultations with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. *Hence, prospective clients should receive some but not all of the protection afforded clients.*

Model R. Prof. Cond. 1.18 cmt. 1 (emphasis added). This difference in duties and consequent protections makes sense "[b]ecause the relationship between a prospective client and a lawyer by definition never reaches the stage where the duty of loyalty attaches with full force." 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law Governing Lawyers* § 21A.6, 21A-15 (3d ed. Supp. 2012). Accordingly, Model Rule

14

1.18 "imposes a less stringent regime on the lawyer than where actual clients and former clients are involved. Put another way, the protections afforded to prospective clients are not as extensive as those provided to 'real' clients." Hazard & Hodes, *supra*, at § 21A.6, 21A-15.

¶27 The District Court disqualified Mossberg's counsel on the basis of Rule 1.20(c). The court concluded properly that, because Luke was a prospective client, "Tarlow & Stonecipher is prohibited from using or revealing information learned in the consultation," and that "if Tarlow & Stonecipher received information from Luke that could be significantly harmful to his case, Tarlow & Stonecipher is prohibited from representing Mossberg in this case." The court emphasized that Renzulli's "motivation" behind his deposition questions to Stephanie was "improper," and it found "troubling" the fact that Tarlow & Stonecipher did not disclose the phone conversation to the Keuffers' counsel at the outset.

¶28 The District Court found that Mossberg's counsel did not use or reveal information learned from the phone conversation in violation of Rule 1.20(b). The court concluded, however, that there was "no reason why the rule should not be equally applicable when an attorney uses the fact that they consulted with a party and declined to represent that party to intimidate that party or to create an adverse inference about that party's case." The court concluded further that "knowing that certain information was not disclosed may be just as harmful as information that was disclosed." The District Court made no finding that Luke disclosed information that could be significantly harmful to him in the case, and acknowledged that "it is not clear what information was

15

disclosed/learned during Luke's 6-12 minute consultation with Weamer." It found nonetheless that "defense counsel used the fact that a consultation even occurred against the [Keuffers] in a significantly harmful manner. Thus, the Court finds that Rule 1.20(c), Mont. R. Prof. C. is applicable to the particular circumstances of this case." The court therefore concluded that "Rule 1.20(c), Mont. R. Prof. C. requires the disqualification of both Tarlow & Stonecipher and the Renzulli Law Firm."

¶29 Our rule requiring a finding of prejudice or adverse impact—which we originally articulated in *Schuff*—"applie[s] to current clients." *Perry*, ¶ 23. *See Pro-Hand Servs. Trust* (analyzing whether there was a "reasonable probability" that confidences were disclosed rather than looking to whether the prospective client would be prejudiced or adversely impacted). In contrast, with a prospective client, if the information disclosed to the attorney could be significantly harmful, disqualification is automatic regardless of prejudice or adverse impact, unless the requirements of Rule 1.20(d) are met.[1] By its plain language, Rule 1.20(c) would disqualify Tarlow & Stonecipher from representing Mossberg in the proceeding—irrespective of any prejudice to the Keuffers—only if Weamer "received information from [Luke] that could be significantly harmful to [Luke] in the matter," subject to the exceptions allowed by Rule 1.20(d). M. R. Prof. Cond. 1.20(c). The inquiry under Rule 1.20(c) is not "whether information was divulged by the prospective client but whether such information could be significantly harmful to that person in that or a related matter." *Perry*, ¶ 21.

---

[1] Rule 1.20(d) allows continued representation under certain exceptions, discussed below.

¶30 Model Rule 1.18(c), which is identical to Rule 1.20(c), "sets the bar preventing adverse *representation* against a former prospective client *lower than normal* in several ways." Hazard & Hodes, *supra,* at § 21A.6, 21A-15 (second emphasis added). Model Rule 1.18(c) most significantly lowers the bar on adverse representation by providing that "the lawyer consulting with the prospective client is not personally barred from later opposing the client, *even in the same or a substantially related matter*, unless *in addition* the information learned 'could be significantly harmful.'" Hazard & Hodes, *supra,* at § 21A.6, 21A-15 (emphasis in original).

¶31 The District Court made no finding that Luke divulged any such information in this case. Although the court correctly recognized that disqualification under Rule 1.20 is proper only if it could find that Mossberg's counsel violated Rule 1.20(c), the court exceeded the proscriptions of the Rule by concluding that Rule 1.20(c) "is applicable to the particular circumstances of this case" because "defense counsel used *the fact that a consultation even occurred* against the [Keuffers] in a *significantly harmful manner*." (Emphasis added.) The court observed that Luke could not remember what he may have said to Weamer. But the court's resulting finding that "knowing that certain information was not disclosed may be just as harmful as information that was disclosed" is not relevant to an inquiry under Rule 1.20(c), which focuses on information the "lawyer received" from the prospective client. *Perry*, ¶ 21. Moreover, after considering the evidence, the court found that "it is not clear what information was disclosed/learned during Luke's 6-12 minute consultation with Weamer." The District Court did not, and could not, make the requisite finding under Rule 1.20(c) that Weamer received

17

information that is "significantly harmful" to the Keuffers based upon a finding that it is unclear what information Luke disclosed. Accordingly, there was no justification for disqualification under Rule 1.20(c).

¶32 The District Court also considered Rule 1.20(b) and found as a matter of fact that Mossberg's counsel "did not use or reveal information learned" during the phone conversation. The District Court determined, however, that Rule 1.20(b) should be "equally applicable when an attorney uses the fact that they consulted with a party . . . to intimidate that party or to create an adverse inference about that party's case."

¶33 The Preamble to the Montana Rules of Professional Conduct provides that "[a] lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others," and be "guided by personal conscience and the approbation of professional peers." M. R. Prof. Cond. Preamble ¶¶ 6, 8. The Preamble continues:

> Within the framework of these Rules . . . many difficult issues of professional discretion can arise. Such issues must be resolved through the exercise of sensitive professional and moral judgment guided by the basic principles underlying the Rules. These principles include the lawyer's obligation to protect and pursue a client's legitimate interests, within the bounds of the law, while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system.

M. R. Prof. Cond. Preamble ¶ 10. It is within this context that Rule 1.20(b)'s prohibition against "us[ing] or reveal[ing] information learned in the consultation(s)" with a prospective client must be analyzed.

¶34 Here, Renzulli used Luke's communication with Weamer during his deposition of Stephanie as a litigation tactic to imply that the Keuffers had a weak case. Renzulli's questioning demonstrated a lack of professional, courteous, and civil attitude toward not

18

only the Keuffers, but to the legal system. Renzulli's attempt to harass and intimidate the Keuffers was out of bounds. Even though the District Court found as a matter of fact that Renzulli did not reveal any specific information that Luke divulged to Weamer, the District Court properly recognized that Luke's communication to Tarlow & Stonecipher of "the facts" that prompted him to seek legal assistance was not to be "used" against him by counsel for the adverse party. *Accord Perry*, ¶¶ 29-30 (analyzing whether an attorney violated her duty of confidentiality to a prospective client). *See also* M. R. Prof. Cond. Preamble ¶ 18. Renzulli acknowledged that he was attempting to do just that by suggesting that the Keuffers had to shop the case around before they could find a lawyer who was willing to take it.

¶35 But the Court misapplies Rule 1.20(b) by upholding disqualification on this basis. As discussed above, Rule 1.20 does not trigger disqualification where no significantly harmful information was disclosed. The Court proves the point by its acknowledgment that Rule 1.20(b) does not "require that the information used or revealed be 'significantly harmful,' as would be required to form the basis for disqualification under Rule 1.20(c)." Opinion, ¶ 18. *See* Model R. Prof. Cond. 1.18 cmt. 6 (a "lawyer is *not prohibited* from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter *unless* the lawyer has received from the prospective client *information that could be significantly harmful* if used in the matter" (emphasis added)).

19

¶36　When a lawyer has not received information that could be significantly harmful to a prospective client, the concerns regarding the adverse use of information by the lawyer under Rule 1.20(b) are minimized. Stated another way:

> If no client relationship is formed, the principle of Rule 1.9—explicitly cross-referenced by Rule 1.18(b)—prohibits adverse use of information gained during the earlier consultations with the "almost former clients." Of course, if the unfruitful discussions were truly non-substantive, or involved little or no information "that could be significantly harmful," in the language of Rule 1.18(c), the danger that confidentiality will be compromised is correspondingly small. In such cases the lawyer should not be prohibited from "using" information that he does not really have.

Hazard & Hodes, *supra*, at § 21A.5, 21A-10 (citing *Pro-Hand Servs. Trust* (concluding that a telephone conversation between a prospective client and a lawyer's secretary does not bar the lawyer from subsequently representing the other side, especially where the prospective client makes no showing that any confidential information was provided)). Without disclosure of information "that could be significantly harmful" to the Keuffers, the conclusion follows that disqualification under Rule 1.20 is not proper because Mossberg's counsel "is not prohibited from representing" Mossberg under the plain language of Rule 1.20. Model R. Prof. Cond. 1.18 cmt. 6.

¶37　Absent a basis for disqualification under Rule 1.20(c), disqualification is not appropriate without the proper showing of harm. We have made clear that "a party cannot receive relief from a district court for the mere misconduct of an attorney or firm." *Schuff*, ¶ 34. But

> a trial court may consider attorney violations of the Rules of Professional Conduct if that misconduct results in prejudice or adversely impacts the rights of the parties in the case pending before it. . . . A district court's

20

> discretion in this regard flows from its inherent authority to control trial administration in the interest of fairness and justice.

*Schuff*, ¶ 35 (citations omitted). *See also* § 3-1-111, MCA (granting all courts the power to "provide for the orderly conduct of proceedings," and "control, in furtherance of justice, the conduct" of all other persons "in any manner connected with a judicial proceeding"). "In order to succeed on a motion to disqualify opposing counsel, a party 'must offer sufficient proof that the continued representation of one party by the attorney or firm will prejudice or adversely impact the rights of another party in the matter pending before the court.'" *Krutzfeldt*, ¶ 17 (quoting *Schuff*, ¶ 36). Prejudice in this context means that, irrespective of how the Keuffers understandably felt after Stephanie's deposition, in order to invoke the harsh remedy of disqualification, they must demonstrate how their rights in the litigation would be adversely impacted by Renzulli's and Tarlow & Stonecipher's continued representation of Mossberg.

¶38 In analyzing attorney disqualification, we have recognized that "disqualification has a significant effect on litigation and should be imposed sparingly." *Krutzfeldt*, ¶ 33. "If there are good reasons to disqualify counsel, then we accept the burdens that disqualification imposes. But there should be good reasons." *Krutzfeldt*, ¶ 33 (quoting Ronald D. Rotunda & John S. Dzienkowski, *Legal Ethics: The Lawyer's Deskbook on Professional Responsibility* § 1.7-3, 352 (2011-2012 ed. 2011)). Moreover, because "[d]isqualification burdens the judicial system with delays and it burdens the party that must retain and reeducate new counsel in the proceedings," disqualification is a remedy that should be imposed only if other remedies are lacking. *Krutzfeldt*, ¶ 33. In

*Krutzfeldt*, we ordered disqualification because of Rule 1.10(a)'s automatic imputed disqualification when there is a concurrent conflict of interest, *Krutzfeldt*, ¶ 34; hence, "there is no course short of disqualifying [the opposing party's lawyer] which would respect [counsel]'s duty of loyalty to the Krutzfeldts," who were his current clients. *Krutzfeldt*, ¶ 32. The dearth of cases in which this Court has required disqualification of an attorney for violation of the Rules of Professional Conduct—particularly when related to a party with whom the lawyer has formed no attorney-client relationship— demonstrates the rare imposition of such a harsh remedy.

¶39 The District Court has ample discretion to impose alternate remedies or to consider whether any sanction may be appropriate against Renzulli personally. Chief among those remedies would be an order in limine precluding the offensive line of questioning and any mention of the consultation before a jury. The District Court also has authority under M. R. Civ. P. 30(d)(2) to impose an appropriate sanction on a person who frustrates the fair examination of a deponent. As we have recognized, "the Office of Disciplinary Counsel is the appropriate forum to raise violations of the Montana Rules of Professional Conduct under Rule 1 of the Montana Rules for Lawyer Disciplinary Enforcement." *In re Guardianship & Conservatorship of A.M.M.*, 2015 MT 250, ¶ 77, 380 Mont. 451, 356 P.3d 474. The Rules of Professional Conduct "are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." M. R. Prof. Cond. Preamble ¶ 21. Accordingly, a "violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation." M. R. Prof. Cond. Preamble ¶ 21.

22

Furthermore, the Rules are not to be invoked as a tool in litigation to sanction an attorney. *See* M. R. Prof. Cond. Preamble ¶ 21. Rather, "[t]he Rules exist for the protection of clients." *Krutzfeldt*, ¶ 34.

¶40 The interests of Renzulli's client—about whom the Court is noticeably silent—also are entitled to consideration before disqualifying counsel of its choice. Recognizing that a party "must not be lightly separated from her counsel of choice," we have suggested that disqualification of counsel should not be used for punitive purposes. *Mowrer v. Eddie*, 1999 MT 73, ¶ 23, 294 Mont. 35, 979 P.2d 156. In *Krutzfeldt*, we acknowledged the impact on the client of the disqualified firm but, because "there was no opportunity to implement a screen before [the Krutzfeldts' attorney] began working" at the firm of opposing counsel, the prejudice to them could not be undone. *Krutzfeldt*, ¶ 33. Neither the District Court nor the Court today offer any consideration of the interests of Mossberg or whether the Keuffers' substantial rights may be protected by other means.

¶41 Finally, the Court does not address the Keuffers' argument that Tarlow & Stonecipher should have disclosed Luke's phone call to the Keuffers' counsel after discovering the consultation during the conflict check. That argument is not supported by the Rule. Rule 1.20(c) provides that a lawyer "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d)."

M. R. Prof. Cond. 1.20(c). Rule 1.20(d), in turn, governs disclosure to the prospective client and provides:

> (d) Representation is permissible if both the affected client and the prospective client have given informed consent, confirmed in writing, or:
>
>> 1. the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>>
>> 2. written notice is promptly given to the prospective client.

M. R. Prof. Cond. 1.20(d). In other words, Rule 1.20(d) requires disclosure to the prospective client only *if* a lawyer receives information that could be significantly harmful to the prospective client.

¶42 Similarly, Model Rule 1.18(d) provides that disclosure to a prospective client is required only "[w]hen the lawyer has *received disqualifying information as defined in paragraph (c)*." Model R. Prof. Cond. 1.18(d) (emphasis added). Model Rule 1.18(c) defines "disqualifying information" as "information . . . that could be significantly harmful to [the prospective client] in the matter." Model R. Prof. Cond. 1.18(c). Accordingly, "informed consent, confirmed in writing," "written notice," and screening under Model Rule 1.18(d) are not necessary unless the "lawyer has received disqualifying information." Model R. Prof. Cond. 1.18(d). Stated another way, disclosure under "Rule 1.18(d) comes into effect when [the Rule] disqualifies the lawyer who personally dealt with the former prospective client." Rotunda & Dzienkowski, *Legal Ethics: The Lawyer's Deskbook on Professional Responsibility* § 1.18-2, 743 (2015-2016 ed. 2015).

¶43 As the Court implicitly acknowledges, Opinion, ¶¶ 20-21, no showing was made that significantly harmful information was received by Weamer during her phone

24

conversation with Luke. Mossberg's counsel, therefore, was not required to disclose the consultation to the Keuffers under Rule 1.20(d).

¶44 In summary, the Court effectively adopts a lower disqualification threshold with respect to prospective clients than the standards that apply to current and former clients—at odds with the express language and stated purpose of Rule 1.20. Without a showing that significantly harmful information was communicated, the Court's application of Rule 1.20 in these circumstances is gravely mistaken.


/S/ BETH BAKER


Justice Patricia Cotter joins in the dissenting Opinion of Justice Baker.


/S/ PATRICIA COTTER

Justice Laurie McKinnon, dissenting.

¶45 I agree with the Court that there was a violation of Rule 1.20(b) and that the Keuffers were prejudiced as a result of counsel's use of Luke's prospective client consultation with Mossberg's local counsel, Tarlow & Stonecipher. I similarly agree that there was no violation of Rule 1.20(c) because no showing was made that "significantly harmful information" was conveyed by the Keuffers in the consultation with Weamer. I also agree with the Court that, pursuant to *Schuff*, ¶ 36, violations of professional conduct rules serve as weight which may tip the scales in favor of disqualification, even though the particular rule violated does not mandate disqualification. I part company with the

25

Court, however, in its conclusion that the remedy of disqualification imposed by the District Court was appropriate.

¶46 In my opinion, the District Court abused its discretion in imposing the severe remedy of disqualification, particularly given that the relationship between a prospective client and a lawyer do not impose duties as stringent as between an actual and/or former client and his lawyer. Imposition of such a severe remedy as disqualification should be sparingly imposed, in light of its significant effect in disrupting litigation. *Krutzfeldt*, ¶ 33. Under the circumstances here, disqualification of Mossberg's counsel was an abuse of discretion when the District Court could have simply precluded the offensive line of questioning by both Renzuilli and Tarlow & Stonecipher and thereby maintained the integrity of the proceeding. The public's trust in the legal system in not undermined when a trial court perceives an abuse by counsel and corrects it by a fair, proportionate, and measured remedy.

¶47 As a final consideration, I think it is evident, that the District Court found the facts of this case "unique" but, nonetheless, that a Rule 1.20(b) violation had been substantiated. With respect to Rule 1.20(b), the District Court held:

> The Court finds that defense counsel improperly used Plaintiff's consultation with Tarlow & Stonecipher against them during Stephanie's deposition. This situation is unique in that Rule 1.20(b), Mont. R. Prof. C., states that the attorney "shall not use or reveal information learned in the consultation . . ." and in this case the attorney did not use or reveal information learned, but rather used the fact that the consultation even occurred. The Court finds no reason why the rule should not be equally applicable when an attorney uses the fact that they consulted with a party and declined to represent that party to intimidate that party or to create an adverse inference about that party's case. This is precisely what occurred in this case.

26

While I would not, under the circumstances of this case, find that a violation of Rule 1.20(b) warranted disqualification, I believe the District Court correctly found that Rule 1.20(b) had been violated. As we have held, the violation of a professional conduct rule—even Rule 1.20(b)—could tip the scales in favor of disqualification. *Schuff*, ¶ 36. Nonetheless, while a trial court is in the best position to control and monitor the conduct of trial counsel, under the circumstances presented here, disqualification of Mossberg's counsel was not a measured or fair remedy.

¶48   To the extent we conclude otherwise, I dissent.

/S/ LAURIE McKINNON